**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 25-cr-144-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CARL HOWARD PAYNE,

      Defendant.

---

**ORDER DENYING MOTION TO SUPPRESS**

---

      Before the Court is Defendant Carl Howard Payne's Motion to Suppress ("Motion"). (ECF No. 38.) The Government filed a response (ECF No. 43), to which Payne filed a reply (ECF No. 49). For the following reasons, the Motion is denied.

## I.      BACKGROUND

      This criminal case concerns threatening communications sent via e-mail, Signal (a messaging application), and the United States Postal Service ("USPS").

      On March 20, 2025, someone sent disturbing e-mails from the username "betweensaltandstart@proton.me" to four news agencies. (ECF No. 1.)[1] The e-mails' subject lines state, "Declaration of War," and open as follows:

---

[1] The first warrant application, from which most of these background facts are derived, can be found at 25-sw-525-NRN.

```
17 March 2025

ATTN: News Desk

We have declared war on the 47th Presidential Cabinet of the
United States of America and are sharing details of Our first
Operation.

Specifically, We are responsible for the newsworthy killings that
commence Thursday, 17 April 2025.  The enclosed information is
For Immediate Release and will help validate evidence shown in
the coming social media campaign.

The media are not asking direct, pointed, specific questions of
the Cabinet (e.g., 'Why are you discriminating against
minorities'), and the media accept the morsels they're given for
a chance to be close to the action.  We will get you closer.

We are Luigi.  We Are One.
```

(*Id.* at 22.)

The e-mails then go on to express a litany of grievances against President

Donald Trump.  (*Id.* at 22–24.)  They close as follows:

Operation: Swasticar

Objective:
The death of Elon Musk

Abstract:
On Thursday, 17 April 2025, We will begin killing war financiers,
specifically owners, drivers, and occupants of Tesla
Swasticars.  Terminations will take place at their homes, on the
road, while shopping, or at Nazi charging stations.  We will
continue this Operation until Elon Musk's death.

Duration:
Perpetual until complete.  He is no longer welcome to be alive.

Terms:
There are no terms.  This is a counterattack with a S.M.A.R.T.
objective.

Specific Evidence of Our Activity:

- All bullets are .30 or .40 or .50 caliber, always FMJ.
- All Semtex is from the same source; caps and Detcord are
  not.
- All guitar strings are G's (0.0170") and from the same
  manufacturer.
- Our EXIF data always matches the termination site.
- We 3D-print those plastic tools for that exact purpose, and
  filament color is meaningless.

Evidence that it was *not* Us:

- Escalating confrontations or "road rage."
- Bullets not listed above.
- Use of IEDs.
- Survivors.
- Rope.

Advice:

- Municipalities with high Swasticar density should prepare an
  adequate HAZMAT response plan.  Ideally, prepare for
  simultaneous electric vehicle fires, containment of toxic
  smoke, and executing a downwind-evacuation.

3

(*Id.* at 24.)  That same day, the same message was sent to three news agencies via Signal by a user named "c."  (*Id.* at 25.)

Then, in early April 2025, someone sent via USPS physical letters containing substantially similar threats to three car insurance companies.  (*Id.* at 39.)  The letters announced: "We are responsible for the newsworthy killings that commence Thursday, 17 April 2025."  (*Id.* at 40.)  The letters continued: "We recommend you **cancel all comprehensive vehicle coverage** of Tesla vehicles effective April 16, 2025.  We are Luigi.  We are one."  (*Id.* (emphasis in original).)

The Government's initial investigation revealed that Payne may have sent these threatening messages and letters.  Accordingly, it applied, through Federal Bureau of Investigation Special Agent Rachael Cohen, for a warrant to search Payne, his home, and his car.  (*See generally id.*)  From those locations, the Government sought to seize

> items . . . that constitute contraband, evidence of instrumentalities of the commission of violations of 18 U.S.C. § 875(c) (the 'Subject Offense'), including the following:
>
> 1. Manifesto(s), or other records, outlining a plan to commit a crime of violence;
>
> 2. Records or information related to any past anti-government attacks;
>
> 3. Computers or storage media used as a means to commit the Subject Offense, including preparing and/or transmitting the threatening emails and messages;
>
> 4. Routers, modems, and network equipment used to connect computers to the Internet.
>
> 5. Records and information that tend to establish ownership or use of computers or storage media that were used to commit the Subject Offense, to include credit card bills,

telephone bills, correspondence and other identification documents;

6. Records and information relating to the e-mail account betweensaltandstart@proton.me;

7. Records and information relating to the Signal account under the username "c";

8. Records and information relating to communications with Internet Protocol address 4.223.165.202;

9. Property, records or information that shows dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents;

10. Rifles, shotguns, handguns, firearms accessories and their component parts, ammunition and magazines, and documents related to the purchase or transfer of firearms or ammunition, and information and communications about the same;

11. Semtex and other composite C4 plastic explosives, explosive materials and matter, and other components thereof; detonation cables, cords, charges, and blasting caps;

12. Records and information relating to ordering or purchasing of firearms or ammunition;

13. Property, records, or other information related to the ordering, purchasing, manufacturing, storage, and transportation of explosives;

14. 3-D printer and accessories, to include SD cards, SDHC cards, and flash drives, filament, resin, plastics and powders;

15. Guitar strings;

16. Liberty Bell postage stamps and white envelopes consistent with those sent to insurance companies; receipts showing the purchase of Liberty Bell postage

5

stamps and white envelopes, printer paper, and computer printers or electronic devices that transfers text or images from a computer onto paper or other medium;

17. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant:

   a.  evidence of who used, owned, or controlled the computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b.  entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   c.  evidence of the lack of such malicious software;

   d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f.  evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

   g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

   h.  evidence of the times the computer was used;

      i.   passwords, encryption keys, and other access devices that may be necessary to access the computer;

      j.   documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

      k.   records of or information about Internet Protocol addresses used by the computer;

      l.   records of or information about the computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      m.  contextual information necessary to understand the evidence described in this attachment; and

      n.   items otherwise described in paragraphs of this Attachment.

(*Id.* at 4–6 (image omitted).)

Upon a finding of probable cause, a federal magistrate judge approved the warrant application.  (ECF No. 2.)  On April 15, 2025, law enforcement officers searched Payne, his home, and his car.  (ECF No. 2.)  The officers seized Payne's phone from his person.  (ECF No. 43 at 4.)  They searched but did not seize any items from his car. (*See id.* ("No items were seized from Mr. Payne's vehicle.").)  And the officers seized the following items from Payne's home: "guns and ammunition"; "computers and electronic devices"; "a shredded draft of the threatening letter"; "a test-print envelope"; "a partially used book of Liberty Bell stamps matching those user on the letters"; "and envelops and printer paper."  (ECF No. 43 at 2, 5.)

Payne's computers and electronic devices were reviewed "off-site." (*Id.* at 5.) "Agent Cohen herself reviewed the extraction of Mr. Payne's mobile phone, focusing on information on the device between January 20, 2025 and April 15, 2025." (*Id.*) "Mr. Payne's computer tower and laptop were searched by a forensic examiner at the Rocky Mountain Regional Computer Forensics Laboratory." (*Id.*) According to the Government, the examiner's report reflects that "Agent Cohen provided the examiner with a copy of the search warrant and the affidavit, and limited the scope of the search to January 1, 2025 and April 30, 2025." (*Id.*) The other electronic devices seized from Payne's home, however, "were either non-functional, were not accessed during the relevant time frame, or were unlikely to contain evidence." (*Id.*) Consequently, those devices were returned to Payne. (*Id.*)

Additionally, "[w]hen the agents executed the warrant on Mr. Payne's residence, they interviewed Mr. Payne's son, who informed them that additional firearms were located in Mr. Payne's storage unit." (ECF No. 43 at 5.) Accordingly, Cohen applied for another search warrant as to the storage unit. (ECF No. 1.)[2] This application sought permission to seize the same items listed above. (*Id.*) After a federal magistrate judge approved that second warrant, law enforcement officers searched the storage unit and seized "two AR lower receivers, component parts of the AR firearms." (ECF No. 43 at 5.)

Based on all this, a grand jury indicted Payne on seven counts. (ECF No. 13.) Counts 1–4 accuse Payne of violating 18 U.S.C. § 875(c), which, as relevant here,

_____

[2] The second warrant application is set forth in Sealed Matter 25-sw-532-NRN (D. Colo.)

proscribes knowingly transmitting in interstate or foreign commerce a communication that contains a threat to injure another.  (*Id.* at 1–2.)  Counts 5–7 accuse Payne of violating 18 U.S.C. § 876(c), which, as relevant here, proscribes knowingly mailing a communication that contains a threat to injure another person.  (*Id.* at 2–3.)

Payne now moves to suppress all this evidence, but he focuses his Motion only on challenging counts 1–4—*i.e.*, the 18 U.S.C. § 875(c) charges.  (ECF No. 32.)  As grounds, he contends that the warrants are deficient in that they are not supported by probable cause as to his car and storage unit.  (*Id.* at 7.)  He further contends that the warrants are not sufficiently particular.  (*Id.* at 12.)

## II.    APPLICABLE LAW

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To that end, it provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  *Id.*

Payne's contentions concern the probable cause and particularity standards.  Probable cause exists when there "is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Alqahtani*, 73 F.4th 835, 842 (10th Cir. 2023).  "In determining whether a warrant is supported by probable cause, [courts] assess the sufficiency of a supporting affidavit based on the totality of the circumstances."  *United States v. Morin*, 188 F. App'x 709, 712 (10th Cir. 2006) (quoting *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005)).  While a "fair probability"

must exist, establishing probable cause "does not demand all possible precision." *Herring v. United States*, 555 U.S. 135, 139 (2009). A magistrate judge's "determination of probable cause" is afforded "great deference" so long as that "determination had a substantial basis." *Morin*, 188 F. App'x at 712 (quoting *Cantu*, 405 F.3d at 1176–77).

As to particularity, the Fourth Amendment requires that a search "be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Salas*, 106 F.4th 1050, 1056 (10th Cir. 2024) (quoting *United States v. Otero*, 563 F.3d 1127, 1131–32 (10th Cir. 2009)). Warrants are sufficiently particular if they make clear and concrete to the searching officer what items they can permissibly seize. *Id.* In other words, a warrant should leave nothing up "to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see also United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) ("A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized.") (citation omitted).

Computers and phones present unique challenges in the Fourth Amendment context. This is because such electronic devices enable people "to store and intermingle a huge array of one's personal papers in a single place," which "increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs . . . ." *Otero*, 563 F.3d at 1132. "[T]he particularity requirement" therefore becomes "that much more important" with respect to these kinds of electronic devices. *Id.* As such, Tenth Circuit caselaw requires "warrants for computer searches [to] affirmatively

limit the search to evidence of specific federal crimes or specific types of material." *Id.* (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).

"[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched." *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (quoting *United States v. Hutchings*, 127 F.3d 1255, 1259 (10th Cir. 1997)).  The extent to which a warrant must be particularized depends on the specific circumstances of a given case.  The more complex a case is, the less specificity is required.  *See United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011) ("In this instance, the warrants—when read in light of the crime being investigated (*i.e.*, a broad and complex financial scheme to defraud), and when considered in conjunction with the supporting affidavits—were sufficiently particular to satisfy the requirements of the Fourth Amendment.").  But a simpler case may require the warrant to describe the items to be searched and seized with greater detail.  *Id.*

### III.    ANALYSIS

Payne contends that the two warrants at issue here lack probable cause and sufficient particularity, so the items seized pursuant to those deficient warrants must be suppressed.  (*See generally* ECF No. 32.)  The Court disagrees.

### A.  PROBABLE CAUSE

The Court first addresses Payne's probable cause challenge to the searches of his car and storage unit.

Payne contends that the warrant to search his car was not supported by probable cause, so any evidence seized therefrom must be suppressed. (*Id.* at 8.) But the Government clarifies that "[n]o items were seized from [his] vehicle." (ECF No. 43 at 4.) Payne does not contest the Government's assertion, instead submitting that this statement "should conclude the matter." (ECF No. 49 at 2.) The Court agrees. Because no evidence was seized from Payne's car, there is no evidence to be suppressed from that location. *See United States v. Sims*, 2001 WL 36498440, at *17 (D.N.M. Apr. 19, 2001) ("Since no contraband was found, there is nothing to suppress."). The Court makes clear that no evidence from Payne's vehicle shall be admitted at trial.

Payne's challenge to the items seized from his storage unit is unavailing for a different reason. (ECF No. 32 at 10.) Although Payne insists that probable cause did not support this search, Payne's son told law enforcement officers during their search of Payne's home that more firearms would be found in a safe in Payne's storage unit. (ECF No. 1 at 9.) Significantly, Payne himself had told law enforcement "that he had more than 100 guns." (*Id.*) Yet the Government only found five guns in his home. (*Id.* at 39.) Hence, Payne's son's tip, plus the difference between the number of guns found in Payne's home and the number of guns he said he had, created a fair probability that more guns would be found in the storage unit. To the extent, therefore, that the Motion is predicated on a purported lack of probable cause to seize items from Payne's storage unit, it is denied.

12

## B.  PARTICULARITY

Payne contends that the warrants are insufficiently particular.  (ECF No. 32 at 12.)  Again, the Court disagrees.

### 1.  OVERBREADTH

At the outset, the Court observes that Payne repeatedly argues throughout his Motion and reply that the warrants are overbroad, despite his insistence that he intends to only challenge the warrants' purported lack of particularity.  (*See generally* ECF Nos. 32, 49.)  Whether Payne raises an overbreadth or particularity challenge "is important" (in Payne's words) because the two challenges involve different analyses.  *See United States v. Cotto*, 995 F.3d 786, 798 (10th Cir. 2021) ("There is a difference, however, between warrants which are 'general' and those which are 'overly broad.'").  (ECF No. 49 at 2.)

An overbreadth argument challenges the nexus between the alleged crime and the evidence law enforcement seeks to search and seize.  Specifically, "[a] warrant may be overbroad if it authorizes the seizure of items for which there is no probable cause along with items for which there is."  *United States v. Crockett*, 707 F. Supp. 3d 1075, 1080 (D. Kan. 2023).  A particularity argument, by contrast, challenges the specificity or vagueness of a warrant's terms.  *Id.*  Overbreadth challenges require courts to consider whether probable cause exists; accordingly, courts must necessarily reference the supporting affidavits to resolve that question.  *Morin*, 188 F. App'x at 712.  But an affidavit cannot be considered where, as here, the affidavit is not physically attached to and properly referenced by the warrant.  *United States v. Suggs*, 998 F.3d 1125, 1137

13

(10th Cir. 2021). Hence, in this case, the Court *must* consider the affidavits in determining whether the warrants were overbroad. But the Court *cannot* consider those documents in determining whether the warrants lacked particularity.[3]

Several of Payne's arguments plainly demonstrate that he, at times, raises an overbreadth challenge. To start, one of Payne's argument headings claims that "both warrants are overbroad." (ECF No. 32 at 11.) Were that not enough, Payne continues:

- "The warrants in this case *sweep far broader* than the scope of 18 U.S.C. § 875(c)."

- "The lists of items in the 'B' attachments *are not only incredibly broad and go far beyond the scope* of § 875(c) . . ."

- "This is especially the case since the definition of 'computer' provided in *the warrants is so broad*."

- "Many of the items on the list *simply have no connection* to a possible violation of 18 U.S.C. § 875(c)."

- "And for the computers the warrants authorize seizure of 'contextual information necessary to understand the evidence described in this attachment,' which is a catch-all t*hat further broadens and already overbroad search*."

---

[3] This is because the affidavits were not attached to or properly incorporated by the warrants. The Government does not appear to argue otherwise. (*See generally* ECF No. 43.)

- "Furthermore, the repeated use of the same Attachment B for all the locations and persons demonstrates *the overbroad nature* of these warrants."

(*Id.* at 13–15 (emphases added).)

Despite all this, Payne maintains in his reply brief that he "challenges the warrants for lack of particularity, not for overbreadth."  (ECF No. 49 at 1.)  As to the argument heading mentioned above, he explains that that this "argument heading . . . escaped the editing process."  (ECF No. 49 at 1–2.)  Yet, later in that same filing, Payne goes on to conflate the concepts again:

- "That single statute, 18 U.S.C. § 875(c), . . . is the only discernable limitation *on the scope of the warrants*."

- "Even though the warrant purported to be seeking evidence only related to a violation of 18 U.S.C. § 875(c), *it sought seizure of an incredibly broad list of items* that have little to no relation to a violation of § 875(c) based on the text of the warrant."

- "Apart from item number 16, the only reference is to the statute, which is an insufficient limiting principle by itself that would allow seizure of all the items listed *which have nothing to do with sending a communication containing a threat*."

- "For the reasons above, merely listing the statute in this case does not provide a sufficient limitation on its own *for the expansive list of items* included in the warrant."

15

(*Id.* at 3–8.)

As best the Court can tell, Payne believes the warrants are overbroad because they permitted law enforcement officers to search for, among other items, "[f]irearms and records related to them," "explosives and related material," 3-D printers and various related accessories," "and guitar strings." (ECF No. 32 at 14.) In other words, he argues that the warrants lacked probable cause to search for and seize these items because one does not violate 18 U.S.C. § 875(c) by possessing those items—rather, a person violates that section merely by knowingly transmitting a threatening communication with the intent to make a threat. (*Id.*)

But Payne has specifically disavowed this overbreadth argument. To reiterate, Payne expressly insists in his reply that he does not advance an overbreadth challenge to the warrants. (ECF No. 49 at 1–2.) On this basis alone, the Court rejects Payne's contention that the warrant did not properly permit law enforcement officers to search and seize the guns, explosives, 3-D printers, and guitar strings.

At any rate, the Court also rejects Payne's overbreadth challenge on the merits as well. The warrants permissibly authorized the search of these items because the items tend to prove the elements of the alleged crime—*i.e.*, identity and intent. That is, these items make it more likely that Payne drafted the messages and letters because they were found in his home (identity), and they also make it more likely that he knowingly sent threatening letters (intent). *See United States v. Twitty*, 689 F. App'x 890, 895 (10th Cir. 2017) ("First, we disagree that the photos were irrelevant. They gave context to Mr. Twitty's letters referencing the same weapons and ammunition

16

depicted in the photos and also made his intent to threaten more likely because the photos showed that Mr. Twitty's letter referred to real, rather than fictitious, firearms."). Hence, contrary to Payne's assertion, there is a sufficient nexus between 18 U.S.C. § 875(c) and the items described above such that the warrants were supported by probable cause.

For these reasons, the Court rejects the Motion to the extent it challenges the warrants' breadth.

## 2. WERE THE WARRANTS SUFFICIENTLY PARTICULAR?

Payne contends that the warrants "contain many vague and unbounded descriptions that do not provide sufficient guidance such that 'nothing is left to the discretion of the officer executing the warrant.'"  (ECF No. 32 (quoting *Leary*, 846 F.2d at 600).)  Specifically, Payne appears to challenge four categories of evidence listed above: (1) paragraph number two, which permitted the search and seizure of "[r]ecords or information related to any past anti-government attacks"; (2) paragraph number eight, which permitted the search and seizure of "[r]ecords and information relating to communications with Internet Protocol address 4.223.165.202"; (3) paragraph number three, which permitted the search and seizure of "[c]omputers or storage media used as a means to commit the Subject Offense, including preparing and/or transmitting the threatening emails and messages"; and (4) paragraph number seventeen, subpart m, which permitted the search and seizure of computers and "contextual information necessary to understand the evidence described in this attachment."  (*Id.* at 13–15.)

The problem for Payne, however, is that the warrants at issue here comported with the Tenth Circuit's guidance that a warrant "may pass the particularity test if [it] limit[s] [its] scope either to evidence of specific federal crimes or specific types of material." *Christie*, 717 F.3d at 1165.  The Government's warrants here did both.

First, the warrants' Attachment B, which lists the items identified above, opens by authorizing law enforcement officers to seize "items . . . that constitute contraband, evidence of instrumentalities of the commission of violations of 18 U.S.C. § 875(c) (the 'Subject Offense') . . . ."  (ECF No. 1 at 4.)  Thus, the warrants plainly instruct law enforcement officers that the items they are permitted to seize must constitute evidence tending to show a violation of a specific federal statute.  This limiting principle has been blessed by the Tenth Circuit in several past cases.  *See Christie*, 717 F.3d at 1165 (collecting cases).

Payne nonetheless faults the warrants because not all of the numerous paragraphs listed after the opening paragraph specifically cite 18 U.S.C. § 875(c).  (ECF No. 32 at 14.)  Instead, only paragraph numbers three and five do so.  (ECF No. 1 at 4.) But the Fourth Amendment does not require such technical drafting.  *Simpson*, 152 F.3d at 1248.  As mentioned, to satisfy the particularity clause of the Fourth Amendment, the warrants need only practically and accurately convey to an executing officer what items they can take from a given place. *Id.*  The warrants' opening paragraph did so here.

In this way, the warrants here are distinguishable from the warrants that failed in *Suggs* and *Otero*, on which Payne relies.  In *Suggs*, the Tenth Circuit invalidated a warrant that "authorized officers to search for and seize evidence of *any* crime."  998

F.3d at 1133 (emphasis in original).  That is, the warrant did not purport to limit its terms to any specific crime at all.  *Id.*  And in *Otero*, the Tenth Circuit struck down a warrant that "t[ook] pains to limit the search to evidence of specific crimes" in one section, but "ha[d] no limiting instruction whatsoever" in another section.  563 F.3d 1127, 1132 (10th Cir. 2009).

By contrast, here, the warrants are not broken off into sections like the warrants in *Suggs* and *Otero*.  The warrants are, instead, organized in a continuous, numbered list.  (ECF No. 1 at 4–6 (image omitted).)  Thus, the opening paragraph naturally reads as applying to all of the numbered paragraphs that immediately follow.  *See United States v. Brooks*, 427 F.3d 1246 (10th Cir. 2005) (reasoning that, while "the language of the warrant may, on first glance, authorize a broad, unchanneled search through [the] document files, as a whole, its language more naturally instructs officers to search those files only for evidence related to child pornography").  In the Court's view, an officer reading the warrants in this case would readily understand that they were restrained to search for and seize items only to the extent the items tended to show a violation of 18 U.S.C. § 875(c).  The fact that two of the paragraphs expressly repeat this limiting principle would not lead a reasonable officer to disregard the opening paragraph as to the rest of warrants' provisions.[4]  The overall structure of the warrants does not compel that sort of interpretation.

---

[4] The Court presumes that paragraphs three and five specifically cite 18 U.S.C. § 875(c) (and don't just rely on the opening paragraph) because Tenth Circuit authority specifically requires terms authorizing the computer searches to "affirmatively limit the search to evidence of specific federal crimes or specific types of material."  *Id.* (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).

Second, the warrants list specific types of material law enforcement officers were permitted to search and seize. (*Id.*) Indeed, the warrants are relatively exhaustive on this point, enumerating 17 categories of items to be searched and seized, including one paragraph that contains 14 subparts. (*Id.*)

Payne argues that paragraph two—"[r]ecords or information related to any past anti-government attacks"—is too vague, essentially because it does not specifically refer to an example of an anti-government attack. (ECF No. 32 at 13.) But the warrants did not need to single out examples of anti-government attacks to pass constitutional muster. The warrants needed only make clear to an executing officer that such evidence tended to show the existence of the charged crime. The warrants here did so by way of the opening paragraph. Thus, paragraph two, read in tandem with the opening paragraph, is not so vague that it would permit an officer to seize a "history novel," as Payne suggests. (*Id.*) Possessing *Tom Sawyer & Huckleberry Finn*, for example, would not reasonably indicate that Payne had violated 18 U.S.C. § 875(c). It would therefore not have been subject to seizure under the warrants' plain language.[5]

Payne next turns his focus to paragraph three—"[c]omputers or storage media used as a means to commit the Subject Offense, including preparing and/or transmitting the threatening emails and messages"—which he says is not sufficiently particularized because "[a]n agent wouldn't know which computers were possibly used to commit the Subject Offense . . . ." (*Id.*) But that begs the question: In what circumstances would an

---

[5] Articles about the Luigi Mangioni case, however, would likely fit that bill. That incident involves an alleged anti-government attack. Notably, moreover, the messages and letters expressly referred to that defendant in his written threats.

executing officer *ever* know which specific computer was used in a threats case like this?  Unless the defendant affirmatively declared that they had used a specific device during the commission of a crime, law enforcement officers would have little to no way of knowing which device was used before conducting a search.  In the Court's view, with respect to electronic devices, a warrant does not fail for lack of particularity because it does not identify a specific electronic device that must be seized.

To be sure, the warrants could have been clearer with respect to the computer searches.  Specifically, the Court shares Payne's concern about paragraph number seventeen, subpart m, which permitted the search and seizure of computers and "contextual information necessary to understand the evidence described in this attachment."  (ECF No. 1 at 6.)  This catchall provision is capacious and could reasonably lead some officers to be confused as to which evidence constituted "contextual information."  (*Id.*)  Put another way, the Court could see how this provision would have left *plenty* up "to the discretion of the officer executing the warrant."  *Marron*, 275 U.S. at 196.

Nevertheless, the Court still does not believe that subpart m renders the warrant fatally non-specific.  Subpart m falls under paragraph number 17.  (*Id.*)  Paragraph number 17 confines its terms to "any computer or storage medium whose seizure is otherwise authorized by the warrant."  (*Id.*)  And paragraph number 3 governs the search and seizure of computers or storage media.  (*Id.* at 4.)  Critically, paragraph number 3 expressly authorizes the searching and seizing of computers only to the extent they were used to commit the "Subject Offense."  (*Id.*)

21

Hence, while subpart m could have been drafted with more specificity, the Court concludes that a natural reading of this language, in the context of the entire warrant, would lead a careful officer to understand that the provision was tied to 18 U.S.C. § 875(c).  *See Suggs*, 998 F.3d at 1134 ("[A] warrant may satisfy the particularity requirement if its text constrains the search to evidence of a specific crime such that it sufficiently narrows language that, on its face, sweeps too broadly."); *but see Otero*, 563 F.3d at 1132 ("Even when read in the context of the overall warrant, therefore, the paragraphs authorizing the computer search were subject to no affirmative limitations.");.

The *Suggs* decision lends helpful guidance on when a general catchall provision might be constitutionally tolerable.  Recall that, there, the warrant closed by "authorizing the search and seizure of '[a]ny item identified as being involved in crime.'"  *Id.* at 1132–33.  In concluding that this catchall language was constitutionally impermissible, the Circuit observed that the language was "not tacked onto or linked with any of the other operative sentences describing the items to be searched for and seized."  *Id.* at 1133.  Notably, the Circuit added:

> *Had the warrant here specified that the search of Defendant's home was being undertaken in connection with the vehicle shooting, it might be possible to read the catch-all phrase, in context, as authorizing a search only for evidence related to that crime.*  But the warrant didn't do that.  Nowhere does the warrant reference any specific offense— let alone the particular firearm-related crime under investigation.  In fact, the warrant never even mentions the vehicle shooting.  To adopt the Government's interpretation, then, we would have to rewrite the warrant to include what it lacks: a reference to the targeted crime(s).  We of course

22

can't do that.

*Id.* at 1134.

Here, however, the warrants' catchall language in paragraph 17, subpart m, *is* linked to other operative sentences narrowing the search to evidence showing that Payne made the threats proscribed by 18 U.S.C. § 875(c). Thus, while somewhat of a close call, the Court concludes that the computer search paragraph, as well as its corresponding terms in paragraph 17, does not offend the particularity clause of the Fourth Amendment.[6] *See Salas*, 106 F.4th at 1057 ("[S]o long as we can discern some limiting principles to the warrant, broad authorizations are permissible.") (citation omitted).

Finally, the Court addresses Payne's challenge to the warrant's alleged failure to limit the officers' search to specific timeframes. (ECF No. 32 at 14.) He points out that the warrants do not constrain the officers to certain time periods when conducting their searches and seizures. (*Id.*) Once again, the Court takes Payne's point that an express temporal limitation would have been preferred here.

Still, Payne does not cite to any authority holding that a temporal limitation is *constitutionally required* in circumstances like those present here. And perhaps to the contrary, the Tenth Circuit has emphasized that "electronic searches [are] invalid 'where we could discern *no limiting principle*: where, for example, the warrant permitted a search of 'any and all' information, data, devices, programs, and other materials." *Id.*

---

[6] While the Court does not perform a robust good faith analysis, it additionally appears at least very plausible that the law enforcement officers here conducted their search in good faith.

(citation omitted) (emphasis added).  As detailed above, the warrants here included specific limiting principles.[7]  Thus, the Court concludes that the Government has minimally cleared its relatively low burden of showing that its warrants had some limiting principle.

Given all this, the Court also rejects Payne's particularity challenge to the warrants.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is DENIED.  (ECF No. 32.)

Dated this 6th day of February, 2026.

BY THE COURT:

_____

William J. Martínez
Senior United States District Judge

---

[7] In any event, Cohen and the forensic examiner did limit their searches of Payne's phone and computers to January 2025–April 2025.  (ECF No. 43 at 2, 5.)  This is yet more evidence of the Government's good faith in executing the search.