IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 25-cr-144-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARL HOWARD PAYNE,

    Defendant.

---

**ORDER GRANTING MOTION TO DISMISS**

---

Before the Court is Defendant Carl Howard Payne's Motion to Dismiss ("Motion"). (ECF No. 37.) The Government filed a response (ECF No. 42), to which Payne filed a reply (ECF No. 48). For the following reasons, the Motion is granted.

## I.    BACKGROUND

This criminal case concerns threatening communications sent via e-mail, Signal (a messaging application), and the United States Postal Service ("USPS").

On March 20, 2025, someone sent disturbing e-mails from the username "betweensaltandstart@proton.me" to four news agencies. (ECF No. 1.)[1] The e-mails' subject lines state, "Declaration of War," and open as follows:

---

[1] The first warrant application, from which most of these background facts are derived, can be found at 25-sw-525-NRN (D. Colo.).

```
17 March 2025

ATTN: News Desk

We have declared war on the 47th Presidential Cabinet of the
United States of America and are sharing details of Our first
Operation.

Specifically, We are responsible for the newsworthy killings that
commence Thursday, 17 April 2025.  The enclosed information is
For Immediate Release and will help validate evidence shown in
the coming social media campaign.

The media are not asking direct, pointed, specific questions of
the Cabinet (e.g., 'Why are you discriminating against
minorities'), and the media accept the morsels they're given for
a chance to be close to the action.  We will get you closer.

We are Luigi.  We Are One.
```

(*Id.* at 22.)

The e-mails then go on to express a litany of grievances against President Donald Trump.  (*Id.* at 22–24.)  They close as follows:

Operation: Swasticar

Objective:
The death of Elon Musk

Abstract:
On Thursday, 17 April 2025, We will begin killing war financiers, specifically owners, drivers, and occupants of Tesla Swasticars. Terminations will take place at their homes, on the road, while shopping, or at Nazi charging stations. We will continue this Operation until Elon Musk's death.

Duration:
Perpetual until complete. He is no longer welcome to be alive.

Terms:
There are no terms. This is a counterattack with a S.M.A.R.T. objective.

Specific Evidence of Our Activity:

- All bullets are .30 or .40 or .50 caliber, always FMJ.
- All Semtex is from the same source; caps and Detcord are not.
- All guitar strings are G's (0.0170") and from the same manufacturer.
- Our EXIF data always matches the termination site.
- We 3D-print those plastic tools for that exact purpose, and filament color is meaningless.

Evidence that it was *not* Us:

- Escalating confrontations or "road rage."
- Bullets not listed above.
- Use of IEDs.
- Survivors.
- Rope.

Advice:

- Municipalities with high Swasticar density should prepare an adequate HAZMAT response plan. Ideally, prepare for simultaneous electric vehicle fires, containment of toxic smoke, and executing a downwind-evacuation.

(*Id.* at 24.)  That same day, the same message was sent to three news agencies via Signal by a user named "c."  (*Id.* at 25.)

Then, in early April 2025, someone sent via USPS physical letters containing substantially similar threats to three car insurance companies: Nationwide Insurance, State Farm Insurance, and Geico Insurance.  (*Id.* at 39.)  The letters were delivered in the following three envelopes:





(*Id.* at 40–42.)

The letters contain the subject line, "ATTN: Legal Department," and include the following salutation: "Dear American Business." (ECF No. 52-1 at 4.) An example of one of the letters is reproduced below:

```
Geico
5260 Western Ave
Chevy Chase, MD 20815


ATTN: Legal Department


17 March 2025



Dear American Business:

We have declared war on the 47th Presidential Cabinet of the
United States of America and are sharing details of Our first
Operation.

Specifically, We are responsible for the newsworthy killings
that commence Thursday, 17 April 2025.  The enclosed information
is For Immediate Release and will help validate evidence shown
in the coming social media campaign.

We recommend you cancel all comprehensive vehicle coverage of
Tesla vehicles effective 16 April 2025.


We are Luigi.  We Are One.
```

The Government's initial investigation revealed that Payne may have sent these threatening messages and letters. Accordingly, it sought and obtained a grand jury indictment of Payne on seven counts. (ECF No. 13.) Counts 1–4 accuse Payne of violating 18 U.S.C. § 875(c), which, as relevant here, proscribes knowingly transmitting in interstate or foreign commerce a communication that contains a threat to injure another. (*Id.* at 1–2.) Counts 5–7 accuse Payne of violating 18 U.S.C. § 876(c), which, as relevant here, states as follows:

6

> Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, *addressed to any other person* and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.

(Emphasis added.)  (*Id.* at 2–3.)

Payne now moves to dismiss his three 18 U.S.C. § 876(c) counts on the grounds that the indictment accuses him of addressing the letters to insurance companies—not persons.  (ECF No. 37.)

## II.   APPLICABLE LAW

"An indictment is sufficient if its sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense."  *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).  "[W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges."  *United States v. Doe*, 572 F.3d 1162, 1173-74 (10th Cir. 2009) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)); Fed. R. Crim. P. 7(c)(1).  "Challenges to an indictment should be resolved based on a four-corner review, taking the allegations contained therein as true."  *United States v. Cunningham*, No. 2:25-CR-20043-BP-JAM, 2025 WL 2793061, at *1 (D. Kan. Sept. 30, 2025) (citing Todd, 446 F.3d at 1067).

"Notwithstanding this general rule, Federal Rule of Criminal Procedure 12(b)(3)(B)(v) provides that a defendant can move to dismiss an indictment for failure to state an offense." *Id.* "[P]retrial dismissals based on 'facts outside the indictment and bearing on the general issue' of guilt are uncommon." *United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir. 2022) (quoting *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010)). Dismissal may be granted, however, "in the 'limited circumstances' where '[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts,' and [3] the district court can determine from them that, 'as a matter of law, the government is incapable of proving its case beyond a reasonable doubt.'" *Id.* (quoting *Pope*, 613 F.3d at 1260 (alterations and emphasis in original)).

As a result, "dismissal is appropriate 'only when and because undisputed evidence shows that . . . the [d]efendant could not have committed the offense for which he was indicted.'" *Chavez*, 29 F.4th at 1226 (quoting *Pope*, 613 F.3d at 1621) (internal quotation marks omitted). The Tenth Circuit has emphasized that dismissals under this rational are the "rare exception," explaining that "Rule 12 is not a parallel to civil summary judgment procedures." *Pope*, 613 F.3d at 1261. Similarly, courts "may entertain motions that require it to answer only pure questions of law." *Id.* at 1260.

### III.   ANALYSIS

Payne contends that his section 876(c) charges cannot stand because the Government has failed to allege an essential element of the offense: that he addressed

threatening communications *to a person*. (*See generally* ECF No. 37.) The Court agrees.

As pertinent here, section 876(c) prohibits any person from knowingly depositing via USPS a communication "*addressed to any other person* and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another . . . ." (Emphasis added.) The statute does not define the word "person." *See generally* § 876(c). And there is no controlling precedent directly addressing whether the word "person" in this statute means a natural person only. In the Court's view, however, the Tenth Circuit has strongly suggested that the word "person" in this statute must mean a natural, individual person—not a corporation. *United States v. Williams*, 376 F.3d 1048 (10th Cir. 2004). Accordingly, the charges here must be dismissed because they accuse Payne of addressing threatening letters to corporations, not people.

The *Williams* decision guides the Court's analysis. There, a defendant sent seven letters to various government officials. *Id.* at 1051 n.2. Five of the letters' envelopes were addressed to U.S. Attorney's Offices, and two of the letters' envelopes were addressed to the "Clerk of Courts." *Id.* All seven of the letters themselves, however, included salutations to individual people: "Hey Asshole"; "Hey, U.S. Attorney"; "Hey, Bitch"; "Dear U.S. Attorney"; "Dear Clerk"; "Hey Asshole, D.A."; and "Dear, U.S. Attorney." *Id.*

Before the Tenth Circuit were two questions of first impression: first, "whether one can look at both the envelope and the salutation to determine whether the letter is 'addressed to any other person' within the meaning of 18 U.S.C. § 876 (2000)," and

9

second, "whether a government official can be a 'person' within the meaning of § 876." *Id.* at 1052 (footnote omitted).  As to the first question, the Circuit held "that one can look, at a minimum, to both the envelope and the salutation of a letter in determining whether the letter is 'addressed to any other person' within the meaning of § 876."  *Id.*

As to the second question, the Circuit held "that a government official is a person within the meaning of § 876."  *Id.* (footnote omitted).  The Circuit reached this conclusion for several reasons.  First, in interpreting the meaning of this ambiguous clause, the Circuit explained that the statute's "primary purpose" "is to proscribe the use of the United States Postal Service to mail to a person a threat to injure that person or another person."  *Id.*  This purpose would be frustrated, the Circuit explained, if the "interpretation of the word 'person'" "exclude[d] government officials."  *Id.*  Indeed, under such a reading of the statute, "one could avoid prosecution under § 876 merely by using a person's official title as opposed to her proper name in addressing a threatening letter."  *Id.*  The Circuit "decline[d] to adopt a construction of the statute that could produce such an anomalous result."  *Id.*

Second, the Circuit observed that its interpretation "is consistent with another purpose of § 876": "'the preservation of the recipient's sense of personal safety.'"  *Id.* (quoting *United States v. Aman*, 31 F.3d 550, 555 (7th Cir. 1994)).  Critically, the Circuit expounded on this principle as follows: "This purpose informs us that *the 'person' to whom the communication is addressed*, or who is threatened by the communication, *must be capable of having a sense of personal safety*."  *Id.* (emphasis added).  The Circuit observed that "[a] government official, being a natural person, has such a sense

10

of personal safety that can be threatened by the proscribed communication." *Id.* As such, the Circuit held "that a government official is a 'person' within the meaning of § 876 because communications addressed *to a specific government official* are clearly targeted *at the natural person* who holds that office at the time, regardless of whether the communication also mentions *that individual's* proper name." *Id.* (emphases added).

Third and finally, the Circuit noted that its holding (of 2004) was "consistent with the only three cases which have directly interpreted § 876's requirement that the threatening communication be 'addressed to any other person.'" *Id.* The Circuit analyzed those cases as follows:

> Consistent with our holding that both the envelope and the salutation are relevant in determining to whom a communication is addressed, a district court ruled that 'a threatening letter is 'addressed' to a person within the meaning of § 876 *if the letter itself is directed to the attention of a specific person*, even though the delivery instructions direct that the mail carrier deliver the letter to an institution.' *United States v. Chapman*, 440 F.Supp.1269, 1270 (E.D. Wis. 1977). *Moreover, in the unpublished disposition United States v. Raymer, the Ninth Circuit noted that 'the context of 18 U.S.C. § 876 makes clear that 'person' means a natural person.'* 71 Fed. Appx. 669, 670 (9th Cir. July 28, 2003). In *United States v. Brownfield*, a district court held that *a letter which is merely addressed to a federal agency is not addressed to a 'person' within the meaning of the statute*. 130 F.Supp.2d 1177, 1183–84 (C.D. Cal. 2001). The court in *Brownfield* reasoned that the letter must instead be addressed to a natural person. *Id.* Both *Raymer* and *Brownfield* are consistent with our holding that a communication addressed to a government official, *who is a natural person*,[2] falls within the ambit of the conduct

---

[2] Although *Williams* did not directly address whether the addressee must be natural person under section 876(c), the Tenth Circuit still pointed out that the government official there was a

>proscribed by § 876.

*Id.* at 1053–54 (emphases added).

Applying these principles, the Circuit concluded that Williams's section 876 convictions were supported by sufficient evidence "because each communication was addressed to a government official." *Id.* at 1054. Although some of the envelopes were addressed to U.S. Attorney's *Offices*, all of the letters' salutations addressed *specific individuals*. *Id.* Accordingly, the Circuit rejected Williams's challenge to the sufficiency of his convictions. *Id.*

The foregoing analysis in *Williams* compels the conclusion that a threatening communication under section 876(c) must be addressed to an individual, natural person. Although this specific issue was not directly before the Tenth Circuit in *Williams*, its reasoning naturally leads to that conclusion. As mentioned, the Circuit stressed that one of section 876(c)'s purposes is "'the preservation of the recipient's sense of personal safety.'" *Id.* at 1052 (quoting *Aman*, 31 F.3d at 555). Consequently, the Circuit explained, "the person to whom the communication is addressed . . . must be capable of having a sense of personal safety." *Id.*

This requirement was satisfied in *Williams* because the addressees there were specific government officials. *Id.* But this requirement fails here because Payne's alleged letters are addressed to corporations. Indeed, the envelopes reproduced above name three insurance companies. And their salutations greet "American Business[es]."

---

natural person. In the Court's view, this is a strong indication that the Circuit would likely hold that being a natural person is necessary in this context.

It is beyond dispute that these sorts of corporate addressees cannot have a sense of personal safety.  *See United States v. Havelock*, 664 F.3d 1284, 1291 (9th Cir. 2012) ("It simply makes no sense to threaten to kidnap a corporation, or injure 'the person' of a corporation, or talk about a deceased corporation.").

To be sure, the Court observes that the letters' subject lines address the insurance companies' "Legal Department[s]."  But the Court again takes heed of language in *Williams* that suggests that a reference to an "office" or "department" is not alone sufficient to state a section 876(c) offense.  In *Williams*, the Tenth Circuit explained that the communications at issue in that case were actionable because they were addressed "to a specific government official" and "clearly targeted at the natural person who hold that office at the time . . . ."  *Id.*

The facts here are different.  Nowhere do Payne's alleged letters suggest that he intended to direct his communications toward a specific individual.  On the contrary, the aims of his threats were the businesses (and their insurance coverage decisions) more generally.  Therefore, while the Court acknowledges that the addressee requirement can be satisfied by looking beyond "the envelope and the salutation of a letter," the envelopes, salutations, and letters here cannot save the Government's case.  *Id.*  Those items are simply bereft of any mention of a specific addressee.[3]

---

[3] Payne urges the Court to consider only the face of indictment in ruling on the Motion.  (ECF No. 48 at 10.)  But the Court questions how it could do so given *Williams's* instruction that the Court should look, at a minimum, at the envelope and salutation of the letters in determining whether the addressee element has been satisfied.  In any event, whether the Court looks to just the indictment—which names as addresses "Insurance Company [1, 2, 3]—or also the envelopes and letters themselves, the result is the same: Payne's section 876 charges must be dismissed.

Nevertheless, the Government maintains that the Court's reading of section 876(c) is misguided for three reasons. First, it argues that that "[t]he phrase 'addressed to any other person' is not an essential element of 18 U.S.C.§ 876(c)." (ECF No. 42 at 4.) This is so, the Government posits, because "Section 876(c) merely requires proof that the accused knowingly mailed the threatening communication, not that he also intended to threaten the person of the recipient thereof." (*Id.* (quoting *United States v. Rendelman*, 641 F.3d 36, 46 (4th Cir. 2011)).) Indeed, the Government continues, "'[i]t does not matter whether the communication is actually delivered.'" (*Id.* at 5 (quoting *United States v. Zavrel*, 384 F.3d 130, 133 (3d Cir. 2004)).)

The Government's argument has some natural appeal. After all, if delivery is not an element of a section 876(c) charge, what difference does it make whether the communication is addressed to a person or a corporation? *See Rendelman*, 841 F.3d at 46 (concluding that section 876(c)'s addressee language is not an essential element of the crime).

Still, section 876(c) plainly requires that the threatening communication be "addressed to any other person . . . ." The Government's position ignores the fact that the Court cannot add or subtract words from a statute. *See Pulsifer v. United States*, 601 U.S. 124, 186 (2024) (J., Gorsuch, dissenting) (explaining that a principle of statutory interpretation is that courts cannot "read words into" or "delete others" in a law). And where it's possible to do so, the Court must interpret the statute in a way that gives meaning to all its provisions. *See Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 141 (2017) ("Whenever possible, however, we should favor an interpretation that

14

gives meaning to each statutory provision."). Importantly, the *Williams* decision appears to again support the notion that the addressee language in section 876(c) is important: The Circuit expressly referred to the "addressed to any other person" clause as being a "*requirement*" of section 876. *Williams*, 376 F.3d at 1053 (emphasis added).

The Court is not persuaded otherwise by the Government's assertion that the addressee clause is meant only to ensure that an accused is not prosecuted for mailing a threatening letter to themself. (ECF No. 42 at 7.) True, the language, "addressed to any other person," appears designed to foreclose prosecution where a defendant mails a threatening communication to themself. § 876(c). But if the addressee clause is material in that it forecloses prosecution where a defendant does not mail a threatening letter to another, the clause is also material insofar as the addressee must be a person. Put another way, the words "any other" and "person" must have distinct, independent meaning in the statute. § 876(c); *see also Havelock*, 664 F.3d at 1292 ("The meaning of this expression is clear—the communication must be addressed to any person other than the sender."). By arguing otherwise, the Government is trying to have its cake and eat it too.

The Government next argues that "[t]he phrase 'addressed to any other person' is not limited to letters addressed to natural persons." (*Id.* at 6.) In support, the Government directs the Court to The Dictionary Act, 1 U.S.C. § 1, which provides that the word "person" includes "corporations." As the Government correctly points out, the Tenth Circuit has instructed courts to refer to the Dictionary Act where a statute

"contains no special definition of 'person.'"  *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1129 (10th Cir. 2013).

But the Dictionary Act controls only "unless the context indicates otherwise . . . ." 1 U.S.C. § 1; *see also Rowland v. California Men's Colony*, 506 U.S. 194, 200 (1993) ("[I]n the awkward case where Congress provides no particular definition, but the definition in 1 U.S.C. § 1 seems not to fit[,] . . . the qualification 'unless the context indicates otherwise' has a real job to do, in excusing the court from forcing a square peg into a round hole.").  The context here indicates that the word "person" should have the same meaning throughout section 876(c).  The Ninth Circuit, sitting *en banc*, has explained why:

> Section 876(c) not only requires that the mail be 'addressed to any other person' but that the offending threat be 'a threat to injure the person of the addressee or of another.'  It makes no sense to threaten 'to injure the person' of a corporation.  *See United States v. Brownfield*, 130 F.Supp.2d 1177, 1180–81 (C.D.Cal.2001).  Accordingly, the threatening communication must be addressed to a natural person, and the indictment in this case was defective in failing so to allege.

*United States v. Havelock*, 619 F.3d 1091, 1095 (9th Cir. 2010), *on reh'g en banc*, 664 F.3d 1284 (9th Cir. 2012) (footnote omitted).

Notably, to adopt the Government's interpretation of section 876(c), the Court would have to hold that the word "person" has two different meanings *within the same sentence*.[4]  In one breath, the word "person" would mean "State Farm"; in the next,

---

[4] The Ninth Circuit has observed that the word naturally has the same meaning throughout the rest of the statute as well:

16

"person" would mean natural person.  The canon of consistent usage advises against such a remarkably labored reading of the statutory text.  *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 22 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning.").

Finally, the Government argues that, even if the Court reaches the conclusions it has, Payne's "threatening letter[s] still violated the statute" because they were addressed "to the human beings in the legal departments of each of the insurance companies . . . ." (*Id.* at 14.)  But the Court has already essentially rejected this argument.  The envelopes, salutations, and contents of the letters all plainly address only corporations, not people.  What's more, no reasonable reading of those materials could lead to the conclusion that the threatening communications were addressed to a specific person.  *See Williams*, 376 F.3d at 1052 (upholding a threat "addressed to a specific government official").

Were the Court to conclude that simply addressing a threatening letter to a general business was enough to violate section 876(c), that would essentially transform any communication directed at a group to be a communication directed at an individual.

---

> The term 'person' is used no less than twelve times in § 876. See 18 U.S.C. § 876. The term is used in various associations, including: 'release of any kidnapped person,' 'any threat to kidnap any person or any threat to injure the person of the addressee or of another,' 'the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime.' *See id.* These associations clearly require that 'person' mean a natural person.  It simply makes no sense to threaten to kidnap a corporation, or injure 'the person' of a corporation, or talk about a deceased corporation.

*Havelock*, 664 F.3d at 1291.

Some jurists have opted to adopt such an interpretation, seemingly to achieve certain results.  *See, e.g., Havelock*, 619 F.3d at 1100 (J., Graber, dissenting) ("Common sense informs us that any piece of mail addressed to a corporation implicitly is addressed also to the natural person who will open it and deal with its contents on behalf of the corporation.").  This Court declines to adopt such a contrived construction of the statutory language.

On this last point, the Court recognizes that its conclusion yields some strange results Congress likely did not intend.  In particular, the Court credits the peculiar outcome outlined in the following hypothetical posed by the Government:

> For example, a letter addressed to XYZ corporation threatening to kill its CEO would avoid prosecution, even if opened and read by human beings working for XYZ corporation.  But the same letter, addressed to a private individual who had no connection to the XYZ corporation or its CEO, would violate the statute, even if the private individual threw the letter away or if the letter was never delivered at all.

(ECF No. 42 at 10.)

The Court further recognizes that the Tenth Circuit has strived to interpret section 876(c) in such a way that would not lead to absurd results.  *See Williams*, 376 F.3d at 1052 (declining "to adopt a construction of the statute that could produce such an anomalous result").  But in the Court's view, interpreting "person" to include a specific government official, referred to by their official title, does not require a herculean level of interpretive effort.  *Id.*  Redefining "person" to mean "corporation," by contrast, is a much bigger ask.

The Court may not "stray from the necessary contextual meaning of" the addressee clause at issue here.  *Havelock*, 619 F.3d at 1098; *see also United States v. Locke*, 471 U.S. 84, 95 (1985) ("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a carte blanche to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do.").  "Congress is free to broaden § 876 if it wishes; [this Court is] not."  *Id.*

In sum, the Court holds that Payne's alleged corporate addressees are not persons within the meaning of section 876, and for this reason Counts 5–7 of the Indictment must be dismissed.

### IV.  CONCLUSION

For the foregoing reasons, the Motion is GRANTED.  (ECF No. 37.)

Counts 5–7, which charge Payne with violating 18 U.S.C. § 876(c), are hereby DISMISSED WITH PREJUDICE.  (ECF No. 13.)  The Court will reset the Final Trial Preparation Conference and Jury Trial by way of separate Order.

Dated this 17th day of February, 2026.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge